UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARK SOMMERER, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| ARLA FOODS, INC., | ) ) ) |
| Defendant. | ) ) |

# COMPLAINT AND JURY DEMAND

## PARTIES

1. The plaintiff, Mark Sommerer ("Mr. Sommerer" or the "Plaintiff"), is currently a male resident of the state of Tennessee, residing at 1324 Laurel Way, Monterey, Tennessee. At all times relevant to this Complaint, Mr. Sommerer was a resident of Connecticut, having previously resided at 66 Summer Street, Apt. #503, Stamford, CT 06901.

2. The defendant Arla Foods, Inc (the "Company" or the "Defendant") is a for-profit corporation that is incorporated in New Jersey and does business in the state of Connecticut. The Company's principal office is located at 106 Allen Rd., 4th Floor, Basking Ridge, NJ 07920.

## JURISDICTION AND VENUE

3. The court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1331 because Plaintiff has brought claims pursuant to the Age Discrimination in Employment Act ("ADEA") 29 U.S.C. §§ 621 *et seq.* The court may exercise supplemental jurisdiction over the Plaintiff's state law claims. 28 U.S.C. §1367.

4. This court has personal jurisdiction over the Defendant because the Defendant has engaged in and transacted business in the State of Connecticut, including by employing the Plaintiff in Connecticut, and Plaintiff's causes of action stem largely from business transactions within the State of Connecticut. Indeed, the Plaintiff was employed by the Defendant in the State of Connecticut, was managed and reprimanded by the Defendant in the State of Connecticut, and was terminated by the Defendant in the State of Connecticut.

5. Additionally at all times relevant to this Complaint, Mr. Sommerer was a resident of Connecticut residing at 66 Summer Street, Apt. #503, Stamford, CT 06901 and was classified by Defendant as a Connecticut employee with Connecticut income taxes withheld from his paycheck.

## STATEMENT OF FACTS

6. Mr. Sommerer is 65 years old and was born in 1957.

7. On or around August 24, 2020, Mr. Sommerer was hired by the Company as a National Account Manager.

8. Mr. Sommerer was responsible for the nationwide sales of Company products to Walmart, Sam's Club, BJ's, and Target.

9. At all relevant times, Mr. Sommerer worked for the Company remotely from Connecticut and was classified by the Company as a Connecticut employee.

10. During Mr. Sommerer's employment, he frequently was required to (and did) visit storefronts in Connecticut of his clients (Walmart, Sam's Club, BJ's, and Target).

11. At all relevant times, the Company employed 20 or more individuals in 20 or more weeks in the current and/or previous calendar year.

12. At all relevant times, Mr. Sommerer was a qualified employee, and his work was satisfactory. Indeed, Mr. Sommerer was one of the top-ranking National Account Managers for both the 2020 and 2021 fiscal years.

13. Notably, as an example of Mr. Sommerer's strong performance, during his time with the Company Mr. Sommerer increased the Company's business with Walmart by 30% (far exceeding his sales increase goal) and recovered $360,000 the Company lost due to administrative billing errors made by other employees around the time of, or before, Mr. Sommerer was hired.

14. In or around November of 2020, after Mr. Sommerer started employment, Chris Webb ("Webb") was hired as the Company's new Director of Sales, replacing Charles Bennett (Mr. Sommerer's original supervisor).

15. As such, Webb became Mr. Sommerer's direct supervisor.

16. Upon information and belief, Webb is substantially younger than Mr. Sommerer by at least twenty years.

17. Starting in or around December of 2020, nearly every time Mr. Sommerer had a meeting with Webb, Webb commented on Mr. Sommerer's older appearance, often with age-related references.

18. For example, Webb commented on Mr. Sommerer's hair being silver in color. Webb also commented on the clothing Mr. Sommerer wore and implied Mr. Sommerer dressed in an old-fashioned manner and like an elderly person.

19. It was clear that these comments about Mr. Sommerer's older appearance were an attempt by Webb to tease and harass Mr. Sommerer based on his older age.

20. Mr. Sommerer raised concerns to Webb about these discriminatory comments, along with the age discrimination, through his words and gestures.

21. In or around January of 2021, the Company's Marketing Analyst, Cathy Nelson ("Nelson"), who handled all of Retail Link, was assigned to a different role within the Company.

22. Retail Link is an online portal used by all Walmart and Sam's Club vendors to manage their products within all Walmart and Sam's Club stores.

23. After Nelson was no longer fulfilling the Retail Link role, Mr. Sommerer was suddenly assigned her Retail Link responsibilities.

24. Notably, prior to Nelson's departure, Mr. Sommerer did not use Retail Link in his role.

25. Indeed, Mr. Sommerer's younger colleagues (other National Sales Managers), upon information and belief, all were assigned by the Company support employees whose job it was to manage the various online vendor portals for their accounts.

26. Notably, Retail Link is very complex and requires significant amounts of manhours to operate.

27. Further, there were many administrative tasks in Retail Link related to minor corrections for delivery of products to Walmart or Sam's Club.

28. These minor task took as long as more significant tasks (such as the receiving back the $360,000 lost in administrative billing errors that Mr. Sommerer had successfully gotten back).

29. Adding this large amount of work to Mr. Sommerer's job duties (despite no other Accounts Manager being required to manage this type of software) made Mr. Sommerer feel he was being set up by Webb to fail.

30. In or around February of 2021, Webb frequently made negative comments to Mr. Sommerer relating to his age, including, but not limited to, questioning Mr. Sommerer as to when

Mr. Sommerer would be retiring and asking whether he (Mr. Sommerer) was tired of working (in a manner making it clear that Webb was pressuring Mr. Sommerer to retire in light of his age).

31. Importantly, at no point prior to these comments had Mr. Sommerer indicated that he planned to retire any time soon.

32. Indeed, Mr. Sommerer repeatedly made clear that he anticipated working for the Company for the foreseeable future. Thus, by continually bringing up the subject of retirement, it was clear that Webb was trying to pressure Mr. Sommerer to retire.

33. In or around March of 2021, based on his excellent performance, Mr. Sommerer received a very positive performance review.

34. Due to this excellent review, he received a pay raise and a bonus of $20,000.

35. Based on this review, it was clear that Mr. Sommerer was meeting the Company's performance expectations.

36. In or around May of 2021, despite Mr. Sommerer's prior positive performance review and continuing strong performance, Webb began to micromanage Mr. Sommerer's work.

37. For example, Webb would regularly ask Mr. Sommerer whether he checked on the Company's invoices in Retail Link.

38. Webb monitored how often Mr. Sommerer logged into Retail Link and could see in the system that Mr. Sommerer had viewed the invoices.

39. Importantly, Webb did not micromanage the other younger National Account Managers in this way and was content with monitoring their overall sales increases.

40. Notably, Mr. Sommerer was successfully completing all his work assignments before their deadlines and continued to surpass all his goals including his overall sales increase goals.

41. Indeed, the administrative tasks in Retail Link did not affect the overall sales to Walmart or Sam's Club.

42. Many of these tasks simply involved claiming small sums (usually tens of dollars) that Walmart had failed to pay.

43. Considering Mr. Sommerer's success as a whole on all his accounts (continually beating his sales increase goals) this focus on Retail Link was strange.

44. Due to the fact that Webb had added these responsibilities onto Mr. Sommerer's job and that they were in addition to the responsibilities required by other younger National Accounts Managers it was clear that Webb was using these minor issues (caused by assigning more work than was possible to complete) as an excuse to pretextually push Mr. Sommerer out due to his age.

45. In or around July of 2021, during one of their meetings, Webb again disparaged Mr. Sommerer despite Mr. Sommerer's continued strong sales increases, implying that Mr. Sommerer was slipping due to his age and called him lazy.

46. Webb also asked Mr. Sommerer if he was sure that he could handle Retail Link and implied that Mr. Sommerer was technologically incompetent due to his older age.

47. Notably, despite not having a dedicated employee to run this portal (like all other National Account Managers had), Mr. Sommerer continued to produce excellent results for the Company.

48. Importantly, Webb did not disparage other National Accounts Managers and call them lazy despite them having more support running the portals for their clients and producing less strong results than Mr. Sommerer was.

49. In or around August 2021, Mr. Sommerer arranged for one of the Company's products to be sold at BJs.

50. This increased the Company's sales by 20% overall.

51. Mr. Sommerer's other accounts continued to grow as well and did so well beyond the goals set by the Company for Mr. Sommerer.

52. Indeed, upon information and belief, Mr. Sommerer was within the top 10% of National Accounts Managers at the Company in terms of growth of sales (the primary measure by which National Accounts Managers were measured).

53. On or around August 17, 2021, Webb scheduled a sales meeting with Mr. Sommerer on his calendar.

54. To Mr. Sommerer's surprise, during this meeting Webb and him were joined by Jill Cross ("Cross") the Vice President of Human Resources.

55. Without warning, Mr. Sommerer was informed he was fired.

56. Neither Webb nor Cross provided a reason for Mr. Sommerer's termination and they quickly ended the call.

57. Notably, at the time of his termination Mr. Sommerer's performance was very strong.

58. Indeed, Mr. Sommerer had just increased the Company's sales by 20% overall.

59. As such, Mr. Sommerer was involuntarily terminated on or around August 17, 2021.

60. Upon information and belief, the Company replaced Mr. Sommerer with a younger individual.

61. Notably, the Company has a progressive discipline policy which calls for multiple steps of discipline before an employee is fired.

62. Pursuant to its progressive discipline policy, the Company typically provided younger individuals with multiple warnings before firing them.

63. Likewise, the Company typically provided younger employees with progressive performance counseling before firing them for alleged performance reasons, including poor reviews and/or Performance Improvement Plans (PIPs).

64. Mr. Sommerer was never given any discipline before his firing, nor was he put on a PIP or any other progressive performance management plan.

65. Likewise, Mr. Sommerer's last performance review before his firing was positive and he was never given a poor performance review.

66. Thus, the Company treated Mr. Sommerer worse than similarly situated younger individuals by failing to follow its own standard progressive counseling and progressive performance management practices.

67. On or around December 22, 2021, Mr. Sommerer timely filed a Charge of Discrimination (the "Charge") with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and the Equal Employment Opportunity Commission.

68. On or around September 23, 2022, Mr. Sommerer notified the CHRO of his intent to file a complaint in court and, accordingly, requested that the CHRO release jurisdiction.

69. The CHRO issued a release of jurisdiction on November 3, 2022.

70. On November 4, 2022, the EEOC provided Mr. Sommerer with a Notice of a Right to Sue letter.

71. This Complaint is timely filed in compliance with the timeframes of relevant laws and requirements.

## COUNT I

**(Discrimination Based on Age in Violation of Conn. Gen. Stat. § 46a-60)**

**Plaintiff v. the Defendant**

72. The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

73. The Company is an employer under the definitions applicable to Conn. Gen. Stat. § 46a-60 because the Company employed three or more persons.

74. The Company, by and through its agents, harassed and discriminated against Mr. Sommerer with respect to his compensation, terms, conditions, or privileges of employment, because of Plaintiff's age.

75. More specifically, the Company subjected Mr. Sommerer to adverse actions because of his age, including, but not limited to, subjecting Mr. Sommerer to a harassing and hostile work environment (including harassment of Mr. Sommerer with offensive comments related to his age), pressuring Mr. Sommerer to retire due to his age, unjustifiably micromanaging Mr. Sommerer's work, setting up Mr. Sommerer to fail by not providing an employee to help him manage Retail Link (like all his younger colleagues had for all of their client portals), and wrongfully terminating Mr. Sommerer.

76. The Company acted with a reckless indifference to Mr. Sommerer's rights or intentionally or wantonly violated Mr. Sommerer's rights.

77. As a direct and proximate result of the Company's violations of Conn. Gen. Stat. § 46-60, the Plaintiff has suffered and continues to suffer damages, including, but not limited to,

lost compensation and benefits, other monetary damages, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

78. The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), damages for diminished earning capacity and injury to reputation, other monetary damages, emotional distress damages, additional compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, attorneys' fees, interest, and costs.

## COUNT II

**(Discrimination in Violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq.)**

**Plaintiff v. the Defendant**

79. The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

80. At all relevant times, Mr. Sommerer was over 40 years old.

81. During all relevant times the Company was an employer under the Age Discrimination in Employment Act, 29 U.S.C. §§621 et. seq. (hereinafter the "ADEA") because it employed more than 20 persons for 20 or more calendar weeks within the previous 12-month period.

82. The Company, by and through its agents, harassed and discriminated against Mr. Sommerer with respect to his compensation, terms, privileges, and/or conditions of employment because of Mr. Sommerer's age.

83. More specifically, the Company subjected Mr. Sommerer to adverse actions because of his age, including, but not limited to, subjecting Mr. Sommerer to a harassing and hostile work environment (including harassment of Mr. Sommerer with offensive comments related to his age), pressuring Mr. Sommerer to retire due to his age, unjustifiably micromanaging Mr. Sommerer's work, setting up Mr. Sommerer to fail by not providing an employee to help him manage Retail Link (like all his younger colleagues had for all of their client portals), and wrongfully terminating Mr. Sommerer.

84. The Company willfully violated the ADEA because the Company knew or should have known its conduct was prohibited by Federal law and/or the Company acted with malice and/or reckless indifference to the federally protected rights of Mr. Sommerer.

85. As a direct and proximate result of the Company's violation of the ADEA, Mr. Sommerer has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

86. Mr. Sommerer seeks all damages to which he is entitled, including, but not limited to lost compensation and benefits (including, but not limited to, back pay and front pay), damages for diminished earning capacity and injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), liquidated damages, interest, attorney's fees, and costs.

## COUNT III

### (Retaliation in Violation of Conn. Gen. Stat. § 46a-60)

### Plaintiff v. the Defendant

87. The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

88. The Plaintiff engaged in protected activity under Conn. Gen. Stat. § 46a-60, including, but not limited to, by expressing protected concerns regarding the harassing and discriminatory actions improperly undertaken by the Company based on the age of the Plaintiff.

89. The Company retaliated against the Plaintiff and/or discriminated against the Plaintiff for opposing one or more acts or practices made unlawful by Conn. Gen. Stat. § 46a-60, including by subjecting Mr. Sommerer to adverse actions, including, but not limited to, subjecting Mr. Sommerer to a harassing and hostile work environment (including harassment of Mr. Sommerer with offensive comments related to his age), pressuring Mr. Sommerer to retire due to his age, unjustifiably micromanaging Mr. Sommerer's work, setting up Mr. Sommerer to fail by not providing an employee to help him manage Retail Link (like all his younger colleagues had for all of their client portals), and wrongfully terminating Mr. Sommerer.

90. The Company acted with a reckless indifference to Mr. Sommerer's rights or intentionally or wantonly violated Mr. Sommerer's rights.

91. As a direct and proximate result of the Company's violations of Conn. Gen. Stat. § 46-60, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

92. The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), damages for diminished earning capacity and injury to reputation, other monetary damages, emotional distress damages, additional compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, attorneys' fees, interest, and costs.

## COUNT IV

**(Retaliation in Violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq.)**

**Plaintiff v. the Defendant**

93. The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

94. The Plaintiff engaged in protected activity under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq., including, but not limited to, by opposing and expressing protected concerns, and/or engaging in other protected activity, related to age discrimination.

95. The Company retaliated against the Plaintiff for engaging in such opposition to age discrimination, by subjecting Mr. Sommerer to adverse actions, including, but not limited to, subjecting Mr. Sommerer to a harassing and hostile work environment (including harassment of Mr. Sommerer with offensive comments related to his age), unjustifiably micromanaging Mr. Sommerer's work, setting up Mr. Sommerer to fail by not providing an employee to help him manage Retail Link (like all his younger colleagues had for all of their client portals), and wrongfully terminating Mr. Sommerer.

96. The Company unlawfully coerced, intimidated, threatened, and/or interfered with Mr. Sommerer's exercising of, or enjoyment of, one or more rights granted by the ADEA.

97. The Company acted with malice and/or with reckless indifference to the federally protected rights of Mr. Sommerer.

98. As a direct and proximate result of the Company's violations of the ADEA, Mr. Sommerer has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

99. Mr. Sommerer seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), damages for diminished earning capacity and injury to reputation, other monetary damages, emotional distress damages, additional compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, attorneys' fees, interest, and costs.

> WHEREFORE, the Plaintiff, Mark Sommerer, respectfully requests that this honorable court:
>
> A. Schedule this matter for trial by jury;
>
> B. Find the Defendant liable on all counts;
>
> C. Award the Plaintiff his lost compensation and benefits (including, but not limited to, back pay and front pay);

D. Award the Plaintiff other monetary damages, including damages for his diminished earning capacity and injury to reputation;

E. Award the Plaintiff damages for emotional distress;

F. Award the Plaintiff compensatory damages, including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

G. Award the Plaintiff punitive damages;

H. Award the Plaintiff liquidated damages;

I. Award the Plaintiff his reasonable attorney's fees;

J. Award the Plaintiff interest and costs;

K. Award the Plaintiff all other damages to which he is entitled; and

L. Grant such further relief as is just and equitable.

Respectfully Submitted,

Mark Sommerer

By his attorneys,

THE LAW OFFICES OF WYATT & ASSOCIATES P.L.L.C

Date:  November 14, 2022         By:    */s/Timothy J. Brock*_____

Benjamin J. Wyatt
BWyatt@Wyattlegalservices.com
CT State Bar: 437487
D. Conn. No.: ct29994

Michael R. Varraso
mvarraso@wyattlegalservices.com
CT State Bar: 439521
D. Conn. No.: ct307777

Timothy J. Brock
tbrock@wyattlegalservices.com
CT State Bar: 439300
D. Conn. No.: ct30864